KENNETH A. PAUL

ATTORNEY AT LAW

111 BROADWAY

SUITE 701

NEW YORK, NEW YORK 10006

TEL: (212) 587-8000
FAX: (212) 374-1506
kpaul64@aol.com

June 19, 2007

<u>Via ECF/Hand Delivery</u>
Honorable Robert P. Patterson, Jr.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    <u>United States v. Phil Endellicate</u>
               07 Cr. 889 (RPP)

Dear Judge Patterson:

      I represent Mr. Phil Endellicate on the above-referenced matter and who is presently scheduled to be sentenced on June 26, 2008. Mr. Endellicate entered a plea of guilty to Counts One and Two of this Indictment before Your Honor on March 21, 2008.

      Count One and Two charged my client with conspiring to operate an illegal gambling business that engaged in sports bookmaking from in or about 2006 through 2007 in violation of Title 18, United States Code, Section 371 and operating an illegal gambling business in violation of Title 18, United States Code, Section 1955. Each count carries a maximum sentence of five years' imprisonment; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the pecuniary loss to persons other than the defendant resulting from the offense; and a mandatory $100 special assessment.

      In addition, the Indictment seeks forfeiture of at least $5 million dollars, pursuant to 18 U.S.C. Sections 981(a)(1)(C) and 1955(d) and 28 U.S.C. Section 2461.

      **A.**    **Offense Level**

      This plea was entered without a plea agreement. There was a *Pimentel* letter provided by the Government to counsel and reviewed with my client. The Government's stated position was that the Sentencing Guidelines ("U.S.S.G.") apply to Counts One and Two of the Indictment and that

Honorable Robert P. Patterson, Jr.
June 19, 2008
Page Two

the Guideline section applicable to the conduct charged in Counts One and Two (which are grouped) is Section 2E3.1(a)(1)(A). The base offense level pursuant to Section 2E3.1(a)(1)(A) is 12.

Assuming the defendant clearly demonstrated his acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, the Government agreed that a 2-level reduction would be warranted, pursuant to Section 3E1.1(a), U.S.S.G..

As stated in the Presentence Investigation Report ("PSR"), Mr. Endellicate's Total Offense Level is 10 (PSR at page 7 paragraphs 34 to 46), and since he has no Criminal History Points and is in Criminal History Category I, his guideline range for imprisonment is 6 to 12 months. (PSR at page 10 paragraph 74).

The Government, however, took the position in their *Pimentel* letter that Section 3B1.1(b), U.S.S.G., applied because they claim that Mr. Endellicate was a manager or supervisor of this criminal activity that involved five or more participants. Consequently, it was the position of the Government that there should be three additional levels added to my client's offense level. I disagree.

Mr. Endellicate was never a supervisor or a manager in this criminal activity. On February 6, 2008, my client willingly proffered to the Government in order to fully explain his role in this gambling business. Before he ever got involved in this gambling business he had always been fully employed. First he worked for Citibank until he left in 1980. Unfortunately, soon thereafter he developed medical problems with his heart as well as diabetes. As his medical condition worsened he found that he could not pick up things or stand on his feet for any period of time. Consequently, he went to work at his family restaurant called "Andy's Colonial Tavern". Because this was his family restaurant he was permitted to be the bartender and remain seated most of the day. After working at this restaurant for twenty years, the family lost their lease and had to close their business. Mr. Endellicate was now unemployed and without any income.

My client had grown up with the leader of this gambling business, Joseph Leo. When Mr. Endellicate found himself without any means of employment and Leo learned of this he was asked by Leo to work for him. At first Mr. Endellicate was a bookmaker taking bets over the phone on behalf of Joey Leo. When the operation of Leo's gambling business went overseas in 2006 my client's job changed. He would now be a messenger for Leo. He received messages from Leo and conveyed them to the agents who would in turn convey the messages to their betters, or players. On occasion the agents would call my client because they didn't have all the money from their betters and would ask for additional time to come up with the total amount of money due. This request would be passed along to Leo who would make those decisions.

Honorable Robert P. Patterson, Jr.
June 19, 2008
Page Three

      Each day my client's job was to call overseas to get Leo's winnings and losses from the previous day. The information received overseas consisted of the agents' "package", meaning the winnings and losses relating to the betters for each agent. This would be passed along to the agents by my client telling them what each of their better's winnings and losses were for the week and what their week's total was so they would know what had to be paid out or received. Mr. Endellicate would also pass along to Leo what the agents won or lost. Mr. Leo would then tell my client to contact the agents, or often he would directly contact them himself, to let them know where they should meet him for purposes of either paying him or receive money from him. Additionally, sometimes Leo would have my client pay the agents or receive money from them on his behalf.

      In return for my client being the messenger to the agents on behalf of Leo, as well as the other errands he did for Leo as previously discussed, he was paid $500/week. Mr. Endellicate never took bets nor was he ever compensated other than his weekly payment of $500. In November of 2006, as soon as Mr. Endellicate started to receive his social security check in the amount of $927/month and his pension from Citibank in the amount of $120/month, he stopped working for Joseph Leo.

      Clearly, Section 3B1.1(b), U.S.S.G. is not applicable to the actual role Mr. Endellicate had throughout his participation in this offense. At no time was my client a "manager" or "supervisor" of anyone. He never acted with or had any authority to either "organize, lead, manage, or supervise" anyone nor did he ever exercise "management responsibility over the property, assets, or activities of a criminal organization." (Application Note 2 for Section 3B1.1, U.S.S.G.). My client's only role in this offense was to be a messenger for Joseph Leo and nothing more.

      The resulting Guidelines offense level on Count One and Count Two should be 10 with a guideline range for imprisonment of 6 to 12 months.

      In accordance with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F. 3d 103 (2d Cir. 2005), the sentence shall be determined after consideration of all the factors identified in 18 U.S.C. section 3553(a), including the now advisory Sentencing Guidelines established by the United States Sentencing Commission. The primary directive of Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Guidelines are to be treated as just one of a number of sentencing factors for this Court in determining an appropriate sentence. Thus the sentence imposed shall be the result of a consideration of:

      (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
      (2)    the need for the sentence imposed -

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines...;
(5) any pertinent policy statement [issued by the Sentencing Commission]...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. section 3553(a)

      A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a Guidelines or a non-Guidelines sentence. See Crosby, 397 F.3d at 114-115.

      It is the hope of Mr. Endellicate that if Your Honor examines all of the facts surrounding his case that a determination will be made that his role in this offense does not warrant an increase due to any aggravating role. Consequently, my client's applicable Guideline range would be in Zone B and he would be eligible for a non-jail sentence. (PSR page 10 to 11, paragraphs 74, 79). However, if this Court were to determine that Mr. Endellicate's role was such that it warranted an increase in his Guidelines then this Court would still be able to determine that my client was deserving of a sentence that would be outside the framework and lower than the Guidelines as to permit a non-jail sentence.

      In reaching that decision I would refer Your Honor to my client's age, medical condition, lack of any Criminal History Points, and the fact that to date none of the co-defendants in this case have been sentenced to jail. I do believe that the application of 18 U.S.C. Section 3553(a), after a review of all the circumstances of this case, would warrant a sentence of no jail.

      I have enclosed letters to the Court on behalf of my client. These include letters from both friends and family. I trust these letters will provide Your Honor with a better and more

Honorable Robert P. Patterson, Jr.
June 19, 2008
Page Five

complete understanding of Mr. Phil Endellicate.

    Thank you for your consideration.

Respectfully,

Kenneth A. Paul

KAP:ce
encls.

cc:     David B. Massey
        Assistant United States Attorney     (Via ECF, w/o encls.)

        Phil Endellicate     (Via Regular Mail)